IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        -v-                                   19-CV-_____

THE PREMISES AND REAL PROPERTY WITH
ALL BUILDINGS, APPURTENANCES, AND
IMPROVEMENTS, LOCATED AT 91 LORETTO
DRIVE, CHEEKTOWAGA, NEW YORK, THAT IS,
ALL THAT TRACT OR PARCEL OF LAND, SITUATED
IN THE TOWN OF CHEEKTOWAGA, COUNTY OF
ERIE, AND STATE OF NEW YORK, AND
MORE PARTICULARLY DESCRIBED IN A CERTAIN
DEED RECORDED IN LIBER 11254 OF DEEDS AT
PAGE 1332 AT THE ERIE COUNTY CLERK'S
OFFICE, AND

THE PREMISES AND REAL PROPERTY WITH
ALL BUILDINGS, APPURTENANCES, AND
IMPROVEMENTS, LOCATED AT 660 KLEIN ROAD,
AMHERST, NEW YORK, THAT IS, ALL
THAT TRACT OR PARCEL OF LAND, SITUATED
IN THE TOWN OF AMHERST, COUNTY OF
ERIE, AND STATE OF NEW YORK, AND
MORE PARTICULARLY DESCRIBED IN A CERTAIN
DEED RECORDED IN LIBER 11333 OF DEEDS AT
PAGE 1447 AT THE ERIE COUNTY CLERK'S
OFFICE,

                        Defendants.

_____

## VERIFIED COMPLAINT FOR FORFEITURE

The United States of America, by its attorneys, James P. Kennedy, Jr., United States

Attorney for the Western District of New York, Grace M. Carducci, Assistant United States

Attorney, of counsel, for its verified complaint herein alleges as follows:

1.      This is an action *in rem* for the forfeiture of the premises and real property with

all buildings, appurtenances, and improvements, located at 91 Loretto Drive, Cheektowaga,

New York, that is, all that tract or parcel of land, situated in the town of Cheektowaga, county of Erie, and state of New York, and more particularly described in a certain Deed recorded in Liber 11254 at Page 1332 at the Erie County Clerk's Office (more particularly described in Exhibit A attached hereto) and the real property with all buildings, appurtenances, and improvements, located at 660 Klein Road, Amherst, New York, that is, all that tract or parcel of land, situated in the town of Amherst, county of Erie, and state of New York, and more particularly described in a certain Deed recorded in Liber 11333 at Page 1447 at the Erie County Clerk's Office (more particularly described in Exhibit B attached hereto).   The real properties described in this paragraph will be collectively referred to as "the defendant real properties."

2.     The defendant real properties are subject to forfeiture under the provisions of Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions or traceable to such property, and Title 18, United States Code, Section 981(a)(1)(C) as any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title and hereinafter referred to as "SUA"), to include violations of Title 18, United States Code, Section 1343 (wire fraud).

3.     The jurisdiction of this Court is invoked pursuant to Title 28, United States Code, Sections 1345, 1355, and 1395.   Venue is properly premised in the Western District of New York pursuant to Title 28, United States Code, Section 1395.

### The Criminal Investigation

### BACKGROUND

4.     CVS is a subsidiary of the American retail and health care company CVS Health.   CVS is one of the largest chain pharmacies in the United States and sells prescription medications and an assortment of general merchandise.   CVS employs a variety of people at each of its locations to include a position, which is responsible for maintaining inventory of the prescription medications and medical supplies; preparing purchasing orders and then placing orders through CVS's wholesale vendors.   This position would then also be responsible for verifying the accuracy of the shipments against their purchase order and maintaining records supporting their work.   Each location may have a different title and job requirement for this position.   At the CVS location located at 175, Humboldt Street, Suite 225, Rochester N.Y. this position was classified Senior Assistant Purchasing.

5.     Antonio Rivera's (hereinafter "Rivera") employment by CVS began February 5, 2007 in Buffalo, New York. On or about June 11, 2017, Rivera was transferred to the CVS located at 175, Humboldt Street, Suite 225, Rochester, N.Y. as a Senior Assistant Purchasing Associate.   As previously mentioned, this position required Rivera to order a variety of retail products sold by CVS to include diabetic test strips.   Diabetic test strips are pre-retail medical products pursuant to 18 USC § 670(e)(1), as they are medical products that has not yet been made available for retail purchase by a consumer.   This provided Rivera the access to create unauthorized purchase orders and intercept the unauthorized shipments for his personal gain. Once Rivera received the shipments, he was responsible for logging the shipments into inventory.

3

6.    McKesson is a healthcare company for wholesale medical supplies and equipment located in Rochester, NY. CVS utilizes Mckesson as their sole wholesale distributor for all brands of diabetic test strips. McKesson utilizes an online ordering system for companies to purchase products from them. This system required a personal log-in and pin to access the ordering system. Since Rivera was responsible for purchasing the diabetic test strips for the Humboldt CVS, Mckesson provided him his own personal pin and log-in and CVS granted him access to use their Mckesson account to purchase necessary prescriptions and other items, to include diabetic test strips.

7.    One of the benefits of the secure log-in system is that Mckesson's invoices were all associated with a specific purchaser. Therefore, if there was ever a concern regarding an invoice or an audit was conducted, both CVS and Mckesson could link each item purchased to the specific person responsible for the order.

## Potential Theft Identified

8.    On or about July, 2018, CVS's internal systems red flagged the purchasing of diabetic test strips at the Humboldt CVS location. This prompted CVS District Director of Operations, Scott Nokes, to reach out to the Humboldt CVS's General Manager Robert Wojton (hereinafter "Wojton"). Wojton immediately conducted an inventory check and identified an unknown package in the shipping area. This box was unique in the fact that it did not have a CVS label and had the return address of an employee. The box had a United Parcel Service (hereinafter "UPS") shipping label addressed to: Tylor, TGD Wholesale, STE 345, 10097 Cleary BLVD, Plantation, Florida, 33324. Return label: Antonio Rivera, 1716- 906-7792, 91 Loretto Drive, Cheektowaga, NY 14225. The tracking number of this

4

parcel was 1Z59E6A20104633660.   Wojton opened the box and identified multiple boxes of Freestyle Lite diabetic test strips inside.   Wojton then photographed the box and allowed it to ship via UPS.

9.     TGD Wholesale, LLC (hereinafter "TGD") is a Florida limited liability company which incorporated with the state on February 1, 2018.   Records indicate the company is owned and operated by Tyler Durden (hereinafter "Durden.").   The company is located in Plantation, Florida.   A review of records indicated the company purchases diabetic test strips.   Based on the transactions that occur with Rivera this further indicated the company purchases diabetic test strips.

10.     In addition, CVS does not conduct any business with TGD so there would be no legitimate business reason for a box of Freestyle test strips to be sent to TGD.   In addition, Rivera, in his job capacity, would not have any reason or authority to ship diabetic test strips to an outside vendor.   Lastly, the return address was Rivera's residences leading CVS asset protection team to conclude the content in the box was potentially stolen CVS product.   CVS began an internal investigation immediately regarding Rivera.

11.     Beginning in or about June 2018, Rivera was attempting to secure a mortgage from Hunt Mortgage. I n order to do this he needed to provide proof of income.   Rivera provided an invoice to Hunt Mortgage labeled invoice #6.   This invoice lists AMR Customs at the top, and Bill to: TGD Wholesale.   The invoice is dated July 18, 2018, and lists the items as "144 Lite, Quantity 144, Rate, $55.00 Amount $7,920.00."   The timing of the

invoice and the product "Lite" match the product found in the box by Wojton, and the dates coincide as well.   This invoice provides further support of Rivera's intent to sell CVS property for his own personal gain.   As part of those mortgage documents Rivera signed a letter warning about providing false income documentation to the mortgage company indicating, he was aware that mortgage fraud or bank fraud is investigated by the FBI.

12.     AMR Customs appears to be a shell company owned and operated by Rivera. The company was opened on or around June 25, 2018.   On or about June 25, 2018, a bank account in the name of AMR Customs was opened and listed Rivera as the only signatory. There appears to be no online presence for AMR Customs, and based on the review of bank records, it appears TGD is the main source of income from the account opening date until September 2018.

## CVS's Internal Investigation Results

13.     All Prescription medication in the United States of America is provided a classification number by a national system called National Drug Code (hereinafter "NDC"). This number is a unique ten digit, three segment, number which is a universal product identifier for all human prescription and non-prescription medication packages.   Instead of utilizing brand names and types of drugs, CVS and Mckesson utilize the NDC number for ordering and inventory of their prescription medications.   Audits will therefore reflect NDC numbers as shown below.

14.     An audit was run specifically for purchase orders placed by Rivera through

McKesson from June 2017 until July 2018.   Rivera ordered approximately 20,314 total boxes of diabetic test strips from seven different NDC numbers.

15.    An inventory of all diabetic test strip boxes, remaining at the Humboldt CVS location, was conducted.   The below chart represents the remaining diabetic test strip boxes located on the shelves of the Humbolt CVS location as of July 25, 2018.

| NDC | NDC Description | Remaining boxes as of 07/25/18 | Cost |
|---|---|---|---|
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | 23 | $2,755.40 |
| 53885024450 | ONE TOUCH ULTRA BLUE TEST STRP | 4 | $479.20 |
| 99073070827 | FREESTYLE LITE TEST STRIP | 0 | $0.00 |
| 193731221 | CONTOUR NEXT TEST STRIP | 21 | $2,224.53 |
| 65702040810 | ACCU-CHEK AVIVA PLUS TEST STRP | 19 | $2,964.00 |
| 65702049310 | ACCU-CHEK SMARTVIEW TEST STRP | 0 | $0.00 |
| 53885027210 | ONE TOUCH VERIO TEST STRIP | 21 | $1,365.00 |
| **TOTAL** | | **88** | **$9,788.13** |

16.    According to a dispensing report provided by CVS, while Rivera was employed from June 1, 2017 until July 31, 2018, only 23 boxes of diabetic test strips where dispensed and included only two NDC numbers.   The below chart represents the amounts dispensed.

| NDC | NDC Description | Total units Dispensed |
|---|---|---|
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | 10 |
| 193731221 | CONTOUR NEXT TEST STRIP | 13 |
| **TOTAL** | | **23** |

17.    The below chart is the total number of diabetic test strips purchased during Rivera's employment.   This chart takes into account the above information, NDC numbers dispensed to customers of CVS and any NDC numbers remaining in the CVS inventory as of July 25, 2018.

| NDC | NDC Description | # of Units Per Box | Total Boxes | Cost Per Box | Total |
|---|---|---|---|---|---|
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | 100 | 15,804 | $119.80 | $1,890,563.80 |
| 53885024450 | ONE TOUCH ULTRA BLUE TEST STRP | 50 | 408 | $119.80 | $48,399.20 |
| 99073070827 | FREESTYLE LITE TEST STRIP | 100 | 600 | $135.04 | $81,024.00 |
| 193731221 | CONTOUR NEXT TEST STRIP | 100 | 55 | $105.93 | $3,601.62 |
| 65702040810 | ACCU-CHEK AVIVA PLUS TEST STRP | 100 | 2,208 | $156.00 | $341,484.00 |
| 65702049310 | ACCU-CHEK SMARTVIEW TEST STRIP | 100 | 1,080 | $156.00 | $168,480.00 |
| 53885027210 | ONE TOUCH VERIO TEST STRIP | 100 | 48 | $65.00 | $1,755.00 |
| **TOTAL MISSING** | | | **20,203** | **Loss Amount** | **$2,535,307.62** |

18.    The results of CVS's internal investigation identified Rivera purchased diabetic test strips in excessive amounts, well over the need for the Humboldt location.   CVS's inventory showed there were only five of the seven NDC numbers purchased by Rivera remaining on their shelves for a total of 88 boxes.   The audit also revealed that only two of those seven NDC's were dispensed to customers for a total of 23 boxes.   The audit could not account for 20,203 boxes purchased by Rivera, for a total financial loss those NDC numbers equaling approximately $2,535,307.62.

19.     Until the audit was conducted, Rivera was the only one with knowledge of the 20,203 boxes being ordered and subsequently missing. The combination of the missing boxes in addition to Wojton finding the box full of CVS product with Rivera's personal return address on it, lead the CVS asset prevention team to believe Rivera was intercepting shipments of diabetic test strips and selling them for his own personal gain.

20.     On July 20, 2018, CVS Regional Loss Prevention Manager Keith Gregory (hereinafter "Gregory") met with an investigator from the Rochester Police Department regarding Rivera. Gregory informed the investigator that their internal audit showed a potential loss of approximately $2,535,307.62 and provided supporting documentation of the audit to include surveillance video.

21.     Rivera left the company unexpectedly on or about July 20, 2018, when it was asset prevention's intention to interview him regarding the investigation. Rivera has not returned to work since.

### Further support of the scheme to defraud

22.     On a routine basis, Rivera would knowingly order hundreds of boxes of the aforementioned NDC numbers, which he should reasonably know was well above any need of the CVS store he worked at. A review of the ordering practices at the Humboldt CVS location was conducted from May 2016 until June 2017. This time period reflects an entire year of ordering just prior to Rivera's arrival. Only two NDC numbers were ordered during this time period. The below chart reflects the purchase invoices from May 2016 until June

2017.

| NDC | NDC Description | Vendor Name | Inv Move Date | Qty |
|---|---|---|---|---|
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | MCKESSON OMNICARE OTC LT | 05/02/2017 | 200 |
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | MCKESSON OMNICARE OTC LT | 03/06/2017 | 200 |
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | MCKESSON OMNICARE OTC LT | 10/13/2016 | 100 |
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | MCKESSON OMNICARE OTC LT | 10/05/2016 | 200 |
| 53885024510 | ONE TOUCH ULTRA BLUE TEST STRP | MCKESSON OMNICARE OTC LT | 07/25/2016 | 300 |
| 65702049310 | ACCU-CHEK SMARTVIEW TEST STRIP | MCKESSON OMNICARE OTC LT | 05/18/2016 | 200 |
| | | | Grand Total | 1,200.00 |

23.     After a review of CVS's inventory tracking system, it appears that Rivera manually altered some of the data regarding shipped and received NDC numbers as it relates to the diabetic test strips he ordered, and then diverted upon arrival to CVS.   The altering of this information was in furtherance of the scheme and to assist in concealing his large purchases, and the lack of those NDC numbers in the CVS store.

**Computer Examination**

24.     Rivera was provided a company laptop and a company desktop in order to complete his work.   After a review of both computers CVS identified that Rivera did not use the laptop.   He relied on the desktop computer located at the Humboldt CVS.   In order to access his user profile on the CVS system, Rivera was required to use a personal username and password to log in.   Since logging in required specific security requirements which only Rivera would know, documents found in folders located on his profile would have had to been created by Rivera or saved by Rivera.


25.     On or about September 9, 2018, CVS's cyber investigation team utilized forensic tools to review and analyze files, documents and emails located on Rivera's work computer.   The results of CVS's cyber investigation were provided to law enforcement. Located on Rivera's Dell computer was a PDF file labeled, "Invoice_5."   This invoice lists AMR Customs at the top and Bill to: TGD Wholesale.   As mentioned previously TGD was the company which Rivera sent the box of Freestyle Lite Diabetic test strips and appears to be one of AMR Custom's largest consumers.   The invoice is dated July 13, 2018, and list the items as "384 OT, Quantity 384, Rate, $60.00 Amount $23,040.00".   On that same day, McKesson invoice number, 7881134522 identified a quantity of 384 One Touch Blue Ultra diabetic test strips, billed to CVS and ordered by Rivera.   The cyber investigation also yielded bank account statements and PayPal statements showing large amounts of money being deposited from TGD and other companies known to purchase diabetic test strips or associated with companies known to purchase test strips from individuals.   Rivera's computer also yielded multiple UPS tracking labels from Rivera to Durden or TGD.

11

## Payments for diabetic test strips

26.     As evidenced above, Rivera ordered the excessive amounts of diabetic test strips and then intercepted the shipments of diabetic test strips once they arrived for his own personal gain and in furtherance of his scheme to defraud CVS.  The identification of the 20,203 missing boxes of NDC numbers, the altered tracking records, the invoices to TGD and the analysis of Rivera's computer, provide further evidence that Rivera was responsible for the theft of the aforementioned NDC numbers.   As will be further described below, a review of Rivera's bank records will provide additional evidence that Rivera sold the aforementioned diabetic test strips for his own personal gain.   Since the diabetic test strips were fraudulently obtained any and all proceeds from the sale of those diabetic test strips can be considered proceeds of wire fraud and theft from pre-retail medical products.

27.     A review of Rivera's banking activity showed he utilized PayPal, M&T Bank (hereinafter "M&T") and KeyBank, N.A. (hereinafter "Key")" to receive payments for the sale of the previously identified fraudulently obtained diabetic test strips.   M&T housed two accounts for Rivera, one a personal checking account, and the other a business checking account in the name of AMR Custom.

28.     A forensic accounting of Rivera's bank accounts for the time period of June 15, 2017, through July 21, 2018, identified that payments for the fraudulently obtained diabetic test strips were deposited into Rivera's PayPal account or directly into his M&T account.   A majority of the individual wire transactions listed in Rivera's Paypal statement referenced a specific brand of diabetic test strip purchased in the subject line.   All of the referenced diabetic

12

test strips were consistent with the aforementioned "missing" NDC numbers (diabetic test strips) identified in the audit by CVS.  In the transactions conducted by TGD, an invoice number was listed in the subject line the majority of the time.

29.    An analysis of all bank accounts and PayPal accounts associated with Rivera, and AMR Customs revealed the transactions detail referencing diabetic test strip was related to incoming deposits only.  There were no transactions identifying Rivera purchasing test strips from any wholesaler or third party vendor, which supports that the diabetic test strips sold were the ones taken directly from CVS.

30.    Rivera sold diabetic test strips to National Medical Management (hereinafter "NMM").  NMM wired Rivera money seven (7) different times from July 3, 2017, until December 6, 2017, totaling $51,395.48.  As mentioned above, the subject lines for each of those transactions listed a specific type of diabetic test strip consistent with the fraudulently obtained NDC numbers (diabetic test strips) taken from CVS.

31.    Rivera also received large amounts of money into his personal PayPal account from HMF Distributing Inc. (hereinafter "HMF").   HMF is a company known for purchasing diabetic test strips for sale in their multiple companies. HMF wired twenty-seven (27) transactions totaling $266,492.20 to Rivera's PayPal account for purchase of diabetic test strips.  HMF is owned by Howard Frank (hereinafter "Frank"), who resides in Florida. Durden was also employed at HMF during the time Rivera was selling to them.

32.    TGD wired twenty-one (21) wire transactions to Rivera's PayPal account. These transactions, listed invoice numbers and also totaled approximately $352,152. Between June 27, 2018, and July 16, 2018, Durden wired four (4) transactions totaling $182,240.00 from Durden's bank account directly into AMR Customs M&T account.

33.    The below chart represents a small sample of the deposits that came from NMM, HMF, and TGD into Rivera's PayPal account, including the transaction detail.

| PayPal Post Date | Payment Source | Description | Amount |
|---|---|---|---|
| 7/26/2017 | HMF Distributing, INC. | Accu chek smartview test strips | $ 2,200.00 |
| 9/20/2017 | HMF Distributing, INC. | Accu chek smartview test strips | 8,000.00 |
| 10/13/2017 | National Medical Management, Inc. | accu chek aviva plus test strips | 16,800.00 |
| 12/6/2017 | National Medical Management, Inc. | one touch ultra test strips | 18,145.48 |
| 2/1/2018 | HMF Distributing, INC. | Payment to Antonio Rivera for invoice  0021 | 13,440.00 |
| 3/30/2018 | TGD Wholesale LLC | Payment to Antonio Rivera for invoice  0027 | 19,200.00 |
| 4/19/2018 | TGD Wholesale LLC | Payment to Antonio Rivera for invoice  0037 | 19,200.00 |
| 5/7/2018 | TGD Wholesale LLC | Payment to Antonio Rivera for invoice  0040 | 19,200.00 |
| 6/4/2018 | TGD Wholesale LLC | Payment to Antonio Rivera for invoice  0043 | 21,120.00 |
| 6/18/2018 | TGD Wholesale LLC | Payment to Antonio Rivera for invoice  0047 | 30,336.00 |
| | | **Total of 10 wires** | **$ 167,641.48** |

34.    Rivera chose to let the aforementioned proceeds accumulate in his PayPal account, and then spent the funds directly from his PayPal account or transferred the funds into his personal accounts at M&T and Key.   During the period reviewed, wire fraud proceeds comprised 98% of the deposits into Rivera's PayPal account in the amount of approximately $718,629.68.   The below chart is a sample of a small number of wire transfers that Rivera caused to be transmitted from his PayPal account into his M&T account.

| PayPal Tsfr Date | M&T Post Date | Description | Transfer Amt |
|---|---|---|---|
| 11/16/2017 | 11/20/2017 | PAYPAL TRANSFER | $  10,000.00 |
| 11/28/2017 | 11/29/2017 | PAYPAL TRANSFER | 10,000.00 |
| 12/8/2017 | 12/11/2017 | PAYPAL TRANSFER | 10,000.00 |
| 12/16/2017 | 12/18/2017 | PAYPAL TRANSFER | 11,000.00 |
| 12/29/2017 | 1/2/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/11/2018 | 1/12/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/19/2018 | 1/22/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/24/2018 | 1/25/2018 | PAYPAL TRANSFER | 5,000.00 |
| 1/30/2018 | 1/31/2018 | PAYPAL TRANSFER | 5,000.00 |
| 2/1/2018 | 2/2/2018 | PAYPAL TRANSFER | 5,000.00 |
| 2/16/2018 | 2/20/2018 | PAYPAL TRANSFER | 5,000.00 |
| 3/12/2018 | 3/13/2018 | PAYPAL TRANSFER | 5,000.00 |
| 4/8/2018 | 4/9/2018 | PAYPAL TRANSFER | 5,000.00 |
| 5/3/2018 | 5/4/2018 | PAYPAL TRANSFER | 4,000.00 |
| 5/8/2018 | 5/9/2018 | PAYPAL TRANSFER | 5,000.00 |
| 5/15/2018 | 5/17/2018 | PAYPAL TRANSFER | 1,000.00 |
| 5/17/2018 | 5/18/2018 | PAYPAL TRANSFER | 1,000.00 |
| 6/6/2018 | 6/7/2018 | PAYPAL TRANSFER | 2,000.00 |
| 6/19/2018 | 6/20/2018 | PAYPAL TRANSFER | 1,000.00 |
| 6/20/2018 | 6/21/2018 | PAYPAL TRANSFER | 9,000.00 |
| **TOTAL OF 20 TRANSFERS OF SUA PROCEEDS** | | | **$ 124,000.00** |

## Financial Examination

### SUMMARY OF BANK RECORDS

35.     During the course of this investigation, PayPal, M&T Bank ("M&T") and KeyBank, N.A. ("Key") records relating to Rivera were reviewed.    The analysis of Rivera's PayPal account (ending in 3537), personal and business bank accounts held at M&T (accounts ending in 4033 and 7244, respectively), and Key (account ending in 2742) which will be described in detail below, shows that Rivera received $718,619.68 in wire fraud proceeds/SUA proceeds into his PayPal account during the period June 15, 2017 through July 21, 2018.   He then moved this money into his personal accounts at M&T and Key.   He

also received $182,240.00 in wire fraud proceeds/SUA proceeds directly into his M&T business account during the period June 25, 2018 through July 16, 2018.

### PayPal Account Number XXXXXXXXXXXXXXX-3537 ("Account 1")

36. On or about December 17, 2004, account number XXXXXXXXXXXXXXX-3537 was opened at P a y P a l in the name of Antonio Rivera, cc statement name AMR Customs, email address 95shooff@gmail.com (hereinafter "Account 1"). Rivera is the only known user on this account. The account was reviewed for the period June 15, 2017 through July 21, 2018.

37. An analysis of deposits into the account indicates that Rivera received money from various individuals and businesses for the sale of diabetic test strips. The two companies from which he received the most money were HMF Distributing, Inc. ("HMF") in the amount of $266,492.20 and TGD Wholesale, LLC ("TGD") in the amount of $352,152.00. As previously described, each of these deposits from HMF and TGD represents wire fraud proceeds/SUA proceeds. Rivera chose to let these funds accumulate in his PayPal account and then spent the funds directly from his PayPal account or transferred the funds into his personal accounts at M&T and Key. During the period reviewed, wire fraud proceeds/SUA proceeds comprised 98% of the deposits into Account 1 in the amount of $718,619.68.

### KeyBank Account Number XXXXXXXX2742 ("Account 2")

38. On February 12, 2012, account number XXXXXXXX2742 was opened at KeyBank ("Key") in the name of Antonio M. Rivera and Carrie A. Battel, (hereinafter

"Account 2").   The account was reviewed for the period December 12, 2016 through the account closing date of June 25, 2018.   Based on analysis of the bank records, there were periodic transfers of wire fraud proceeds/SUA proceeds from Account 1 into Account 2 totaling $229,995.25.

39.   The following chart depicts the transfers of SUA proceeds from Account 1 into Account 2:

| PayPal Tsfr Date | KeyBank Post Date | Description | Transfer Amt |
|---|---|---|---|
| 12/23/2017 | 12/26/2017 | POS Mac PayparRivera Anto San Jose CA | $  9,999.75 |
| 12/23/2017 | 12/26/2017 | POS Mac PayparRivera Anto San Jose CA | 9,999.75 |
| 1/24/2018 | 1/24/2018 | POS Mac Paypal Rivera Anto San Jose CA | 9,999.75 |
| 1/25/2018 | 1/25/2018 | POS Mac Paypal Rivera Anto San Jose CA | 9,999.75 |
| 1/26/2018 | 1/26/2018 | POS Mac Paypal Rivera Anto San Jose CA | 4,999.75 |
| 1/30/2018 | 1/31/2018 | Direct Deposit, Paypal Transfer | 3,000.00 |
| 2/1/2018 | 2/2/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 2/2/2018 | 2/5/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 2/16/2018 | 2/16/2018 | POS Mac PayparRivera Anto San Jose CA | 9,999.75 |
| 3/16/2018 | 3/16/2018 | POS Mac Paypal Rivera Anto San Jose CA | 3,999.75 |
| 3/27/2018 | 3/27/2018 | POS Mac Paypal Rivera Anto San Jose CA | 1,999.75 |
| 3/30/2018 | 3/30/2018 | POS Mac Paypal Rivera Anto San Jose CA | 1,999.75 |
| 4/3/2018 | 4/3/2018 | POS Mac Paypal Rivera Anto San Jose CA | 1,999.75 |
| 4/4/2018 | 4/4/2018 | POS Mac Paypal Rivera Anto San Jose CA | 2,999.75 |
| 4/4/2018 | 4/4/2018 | POS Mac Paypal Rivera Anto San Jose CA | 4,999.75 |
| 4/4/2018 | 4/4/2018 | POS Mac Paypal Rivera Anto San Jose CA | 4,999.75 |
| 4/24/2018 | 4/25/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 4/30/2018 | 5/1/2018 | Direct Deposit, Paypal Transfer | 3,000.00 |
| 5/8/2018 | 5/9/2018 | POS Mac Paypal Rivera Anto San Jose CA | 2,999.75 |
| 5/10/2018 | 5/10/2018 | POS Mac Paypal Rivera Anto San Jose CA | 999.75 |
| 5/15/2018 | 5/15/2018 | POS Mac PayparRivera Anto San Jose CA | 2,999.75 |
| 5/24/2018 | 5/24/2018 | POS Mac Paypal Rivera Anto San Jose CA | 2,999.75 |
| 5/30/2018 | 5/30/2018 | POS Mac Paypal Rivera Anto San Jose CA | 3,999.75 |
| 6/10/2018 | 6/11/2018 | POS Mac Paypal Rivera Anto San Jose CA | 4,999.75 |
| 6/14/2018 | 6/15/2018 | Direct Deposit, Paypal Transfer | 2,000.00 |
| 6/14/2018 | 6/15/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 5,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 10,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 10,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 10,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 10,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 20,000.00 |
| 6/15/2018 | 6/18/2018 | Direct Deposit, Paypal Transfer | 30,000.00 |
| | | **TOTAL OF 35 TRANSFERS OF SUA PROCEEDS** | **$ 229,995.25** |

40.     Other deposits into Account 2 included paychecks for both Rivera and Carrie A. Battel, and property tax credits.    Wire fraud proceeds/SUA proceeds comprised approximately 17% and 95% of deposits into Account 2 during 2017 and 2018, respectively.

41.     As depicted in the chart above, on June 18, 2018, there was a $20,000 and a $30,000 transfer from Account 1 into Account 2, all of which was funded with money traceable to proceeds of a wire fraud offense and a SUA, namely Title 18, United States Code, Section 1343 (wire fraud) and therefore constitutes a monetary transaction in excess of $10,000.00 in violation of Title 18, United State Code, Section 1957.

42.     As a result, Account 2 was involved in a money laundering transaction(s) and was funded with money traceable to property involved in a money laundering transaction(s) and would therefore be subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) and Title 19 United States Code, Section 1621 as property involved in money laundering transactions or as property traceable to such property.    In addition, Account 2 has been funded with approximately $229,995.25 of money traceable to proceeds of a SUA or was derived from proceeds traceable to a SUA, namely wire fraud, in violation of Title 18, United States Code, Section 1343, and would therefore be subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud) and Title 19, United States Code, Section 1621.    However, this account was closed on June 25, 2018 and the funds were moved into Rivera's personal M&T account (Account 3). As depicted in the above chart, there were a total of two transfers from Account 1 into Account 2 on June 14, 2018 and nine transfers on June 15, 2018, resulting in a total of $112,000 wire fraud proceeds/SUA proceeds being transferred.    An analysis of the transactional activity for Account 2 and resulting balance

from June 15, 2018 through June 25, 2018 indicates that at the time of account closing, the balance was comprised entirely of wire fraud proceeds/SUA proceeds.   On June 25, 2018, the account had a balance of $105,461.52 and was closed out through the issuance of a Key official check.   This official check was deposited into Account 3 on June 25, 2018, resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957.

### M&T Bank Account Number XXXXXX4033 ("Account 3")

43.   On April 17, 2014, account number XXXXXX4033 was opened at M&T Bank in the name of Antonio M. Rivera and Carrie A. Battel, (hereinafter "Account 3").   The account was reviewed for the period December 17, 2016 through December 17, 2018.   Based on analysis of the bank records, there were periodic transfers of wire fraud proceeds/SUA proceeds from Account 1 into Account 3 totaling $124,000.   The transfers appear to be intended to fund the subsequent mortgage payments on real property located at 91 Loretto Drive, Cheektowaga, NY.   The following chart depicts the transfers of SUA proceeds from Account 1 into Account 3:

| PayPal Tsfr Date | M&T Post Date | Description | Transfer Amt |
|---|---|---|---|
| 11/16/2017 | 11/20/2017 | PAYPAL TRANSFER | $ 10,000.00 |
| 11/28/2017 | 11/29/2017 | PAYPAL TRANSFER | 10,000.00 |
| 12/8/2017 | 12/11/2017 | PAYPAL TRANSFER | 10,000.00 |
| 12/16/2017 | 12/18/2017 | PAYPAL TRANSFER | 11,000.00 |
| 12/29/2017 | 1/2/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/11/2018 | 1/12/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/19/2018 | 1/22/2018 | PAYPAL TRANSFER | 10,000.00 |
| 1/24/2018 | 1/25/2018 | PAYPAL TRANSFER | 5,000.00 |
| 1/30/2018 | 1/31/2018 | PAYPAL TRANSFER | 5,000.00 |
| 2/1/2018 | 2/2/2018 | PAYPAL TRANSFER | 5,000.00 |
| 2/16/2018 | 2/20/2018 | PAYPAL TRANSFER | 5,000.00 |
| 3/12/2018 | 3/13/2018 | PAYPAL TRANSFER | 5,000.00 |
| 4/8/2018 | 4/9/2018 | PAYPAL TRANSFER | 5,000.00 |
| 5/3/2018 | 5/4/2018 | PAYPAL TRANSFER | 4,000.00 |
| 5/8/2018 | 5/9/2018 | PAYPAL TRANSFER | 5,000.00 |
| 5/15/2018 | 5/17/2018 | PAYPAL TRANSFER | 1,000.00 |
| 5/17/2018 | 5/18/2018 | PAYPAL TRANSFER | 1,000.00 |
| 6/6/2018 | 6/7/2018 | PAYPAL TRANSFER | 2,000.00 |
| 6/19/2018 | 6/20/2018 | PAYPAL TRANSFER | 1,000.00 |
| 6/20/2018 | 6/21/2018 | PAYPAL TRANSFER | 9,000.00 |
| **TOTAL OF 20 TRANSFERS OF SUA PROCEEDS** | | | **$ 124,000.00** |

44.     During the period reviewed, there were also transfers of wire fraud proceeds/SUA proceeds from Rivera's M&T business account (Account 4) into Account 3 totaling $123,000.00.   Other deposits into Account 3 included income tax refunds and miscellaneous other deposits.   Wire fraud proceeds/SUA proceeds comprised approximately 69% and 85% of deposits into Account 3 during 2017 and 2018, respectively.

45.     As depicted in the chart above, on December 16, 2017, there was an $11,000 transfer from Account 1 into Account 3, all of which was funded with money traceable to proceeds of a wire fraud offense and a SUA, namely Title 18, United States Code, Section 1343 (wire fraud), resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957.

21

46.     As a result, Account 3 was involved in a money laundering transaction(s) and was funded with money traceable to property involved in a money laundering transaction(s) and is therefore subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and Title 19, United States Code, Section 1621 as property involved in money laundering transactions or as property traceable to such property.   In addition, Account 3 has been funded with approximately $353,461.52 of money traceable to proceeds of a SUA or was derived from proceeds traceable to a SUA, namely wire fraud, in violation of Title 18, United States Code, Section 1343, and is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud), and Title 19, United States Code, Section 1621.   However, this account balance was $106.13 as of December 17, 2018 and therefore, the government will not pursue forfeiture of this account.

## M&T Bank Account Number XXXXXX7244 ("Account 4")

47.     On June 25, 2018, account number XXXXXX7244 was opened at M&T Bank in the name of Antonio M. Rivera DBA AMR Customs, (hereinafter "Account 4").   Antonio M. Rivera is the only authorized user for Account 4.    Account 4 was reviewed for the period June 25, 2018 through January 25, 2019.   Based on analysis of the bank records, there were periodic wire transfers of wire fraud proceeds/SUA proceeds from TGD into Account 4 and then subsequent transfers of these wire fraud proceeds/SUA proceeds from Account 4 into Account 3.

48.     From June 25, 2018 to July 16, 2018, there were four (4) wire transfers from TGD's account at BB&T located in Florida.   Each of these transfers was comprised entirely

22

wire fraud proceeds/SUA proceeds, for a total of $182,240.00, or 77% of all deposits into Account 4 during this period.   $67,000 of the wire fraud proceeds/SUA proceeds was then transferred into Account 3.

The following chart depicts the transfers of SUA proceeds from Account 4 to Account 3:

| Account 4 Post Date | Account 3 Post Date | Description | Transfer Amt | |
|---|---|---|---|---|
| 7/9/2018 | 7/9/2018 | WEB XFER TO CHK XXXXXX4033 | $ | 50,000.00 |
| 7/9/2018 | 7/9/2018 | WEB XFER TO CHK XXXXXX4033 | | 10,000.00 |
| 7/12/2018 | 7/12/2018 | WEB XFER TO CHK XXXXXX4033 | | 7,000.00 |
| | | TOTAL OF 3 TRANSFERS OF SUA PROCEEDS | $ | 67,000.00 |

49.    As of July 6, 2018, the balance in Account 4 was $110,313.86, all of which is deemed to be wire fraud proceeds/SUA proceeds.   As depicted in the chart above, on July 9, 2018, there was a $50,000 transfer from Account 4 into Account 3, all of which was funded with money traceable to proceeds of a wire fraud offense and a SUA, namely Title 18, United States Code, Section 1343 (wire fraud), resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957.   Immediately on July 9, 2018, after the $50,000 transfer of wire fraud proceeds/SUA proceeds from Account 4 into Account 3, there was a $55,000 transfer from Account 3 into Account 4.   This $55,000 transfer included the original $50,000 transfer of wire fraud proceeds/SUA proceeds from Account 4 to Account 3, back into Account 3, and resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957

50.    As a result, Account 4 was involved in a money laundering transaction(s) and

was funded with money traceable to property involved in a money laundering transaction(s) and is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) and Title 19 United States Code, Section 1621 as property involved in money laundering transactions or as property traceable to such property.   In addition, Account 4 has been funded with money traceable to proceeds of a SUA or was derived from proceeds traceable to a SUA, namely wire fraud, in violation of Title 18, United States Code, Section 1343, and is therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 984 as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud) and Title 19, United States Code, Section 1621. To the extent that Account 4 no longer contains the specific funds involved in the offenses described above, identical funds deposited into Account 4 no more than one year from the date of the offense are nonetheless subject to forfeiture pursuant to Title 18, United States Code, Section 984.

## 91 Loretto Drive, Cheektowaga, New York ("defendant real property #1")

51.     On or about September 25, 2013, Antonio Rivera purchased the defendant property #1 from Maureen K. Schnettler.   On or about October 4, 2013, a Deed was filed with the Erie County Clerk's Office between Maureen K. Schnettler (Grantor) and Antonio Rivera (Grantee) for the purchase price of $77,500.   A mortgage was taken from M&T Bank ("the M&T mortgage") for the defendant real property #1 at the time of purchase in the original amount of $80,514.

52.     As previously described, analysis of Account 1 and Account 3 indicates that beginning on or about November 20, 2017, transfers from Account 1 into Account 3 are for

24

the purpose of funding additional principal payments on the M&T mortgage. This determination is based on the close proximity in time and amount from the transfer into Account 3 and the outgoing mortgage payment, in addition to the account balance of Account 3 prior to the transfer. Each of the mortgage payments occurring after November 20, 2017 was funded in this manner and consisted entirely of wire fraud proceeds/SUA proceeds.

53.     Additionally, as previously described, on December 18, 2017, there was an $11,000 transfer from Account 1 into Account 3, all of which was funded with money traceable to proceeds of a wire care fraud offense and a SUA, namely Title 18, United States Code, Section 1343 (wire fraud). As a result, Account 3 was involved in a money laundering transaction(s) and was funded with money traceable to property involved in a money laundering transaction(s). Therefore, since there were eleven payments on the M&T mortgage after Account 3 became property involved in money laundering (December 18, 2017), the defendant real property #1 is property traceable to property involved in money laundering and/or was funded with money traceable to property involved in a money laundering transaction(s) and is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions or as property traceable to such property. In addition, the mortgage on the defendant real property #1 has been paid off with money traceable to a SUA, namely Title 18, United States Code, Section 1343 (wire fraud) and therefore the defendant real property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud). Approximately $78,700.70 in payments toward the mortgage on the defendant real property #1 have been traced to proceeds of a SUA, namely Title 18, United States Code, Section 1343 (wire fraud). On or about July 12, 2018, a Mortgage Discharge was filed with the Erie County Clerk's Office

indicating satisfaction of the M&T mortgage. The defendant real property #1 is currently listed for sale.

### 660 Klein Road, Amherst, New York ("defendant real property #2")

54.     On or about July 27, 2018, Antonio M. Rivera and Carrie A. Battel, as joint tenants with full right of survivorship, purchased the defendant real property #2 from Monte W. Dolce and Karen L. Dolce.   On or about August 14, 2018, a Deed was filed with the Erie County Clerk's Office between Monte W. Dolce and Karen L. Dolce (Grantors) and Antonio M. Rivera and Carrie A. Battel, as joint tenants with full right of survivorship (Grantees) for the purchase price of $290,000.   A private mortgage in the original amount of $140,000 was taken from the Grantors for the defendant real property #2 at the time of purchase.

55.     As previously described, analysis of Account 2 indicated that at the time of the account closeout into Account 3, the balance in Account 2 was comprised entirely of wire fraud proceeds/SUA proceeds.   On June 25, 2018, Account 2 had a balance of $105,461.52 and was closed out through the issuance of a Key official check.   This official check was deposited into Account 3 on June 25, 2018, resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957.   As a result, Account 3 was involved in a money laundering transaction(s) and was funded with money traceable to property involved in a money laundering transaction(s).

56.     As previously described, an analysis of Account 4 shows that wire fraud proceeds/SUA proceeds were deposited into Account 4 and subsequently transferred into Account 3.

57.     On August 13, 2018, there was a withdrawal from Account 3 in the amount of $127,353.68, at the time of this withdrawal, approximately $159,000 of wire fraud proceeds/SUA proceeds remained in Account 3 and funded the withdrawal.     This withdrawal was then utilized to purchase an M&T official check in the amount of $127,353.68 payable to Monte W. and Karen L. Dolce for the purchase of the defendant real property #2, resulting in a monetary transaction in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957.   Therefore, the defendant real property #2 is property involved in a money laundering transaction and/or was funded with money traceable to property involved in a money laundering transaction(s) and is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions or as property traceable to such property.   In addition, the defendant real property #2 has been purchased with money traceable to a SUA, namely Title 18, United States Code, Section 1343 (wire fraud) and therefore is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud).   Approximately $127,353.68 in payments toward the purchase of the defendant real property #2 have been traced to proceeds of a SUA, namely Title 18, United States Code, Section 1343 (wire fraud).

58.     The following chart depicts monetary transactions in excess of $10,000.00 in violation of Title 18, United States Code, Section 1957 as it relates to the defendant property #2.

| Check Date | Post Date | Description | Transaction Amount | SUA proceeds Amt |
|---|---|---|---|---|
| 8/13/2018 | 8/13/2018 | Check to Dolces for purchase of 660 Klein Road | $ 127,353.68 | $ 127,353.68 |
| 8/13/2018 | 8/13/2018 | Check to Carolyn E. Leed, Esq. - related to purchase of 660 Klein Road | 15,913.44 | 15,913.44 |
| 8/13/2018 | 8/13/2018 | Check to Pustaeri & Fitzgerald - related to purchase of 660 Klein Road | 10,730.00 | 10,730.00 |
| | | | $ 153,997.12 | $ 153,997.12 |

59.     Based upon an analysis of the bank records relating to the purchase of the defendant real properties, the defendant real properties have been involved in a money laundering transaction(s) and/or was funded with money traceable to property involved in a money laundering transaction(s) and is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions or as property traceable to such property.   In addition, the defendant real properties have been purchased with money traceable to a SUA, namely Title 18, United States Code, Section 1343 (wire fraud) and therefore is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a SUA (wire fraud) or as property traceable to proceeds of a SUA (wire fraud).

WHEREFORE, the United States of America respectfully requests that:

(1)     due process issue for arrest of the defendant real properties;

(2)     all persons having any interest therein be cited to appear and show cause why the forfeiture should not be decreed;

(3)     a judgment be entered declaring the defendant real properties condemned and forfeited to the United States of America for disposition in accordance with the law;

(4)     the costs of this suit be paid to and recovered by the United States of America; and

(5)     the Court grant such other and further relief as deemed just and proper.

DATED:      February 8, 2019 at Rochester, New York.


                          JAMES P. KENNEDY, JR.
                          United States Attorney
                          Western District of New York

            By:           GRACE M. CARDUCCI
                          Assistant U.S. Attorney
                          United States Attorney's Office
                          Western District of New York
                          500 Federal Building
                          100 State Street
                          Rochester, New York 14614
                          (585) 263-6760
                          Grace.Carducci@usdoj.gov

STATE OF NEW YORK ⟩
COUNTY OF MONROE ⟩  ss
CITY OF ROCHESTER ⟩

KRISTIN M. GIBSON, being duly sworn, deposes and says:

I am a Special Agent with the Federal Bureau of Investigation, and I am familiar with the facts and circumstances surrounding the forfeiture action against the premises and real property located at 91 Loretto Drive, Cheektowaga, New York, and the premises and real property located at 660 Klein Road, Amherst, New York.   The facts alleged in the Complaint for Forfeiture are true to the best of my knowledge and belief and were obtained during the course of the investigation of the defendant assets, and provided to the officials of the United States Department of Justice, United States Attorney's Office.

KRISTIN M. GIBSON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this __ day of February, 2019

Notary Public

ANNA M. SEDOR
Notary Public, State of New York
Monroe County
Commission Expires Oct. 31, 20__

# Exhibit A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Cheektowaga, County of Erie and State of New York, being part of Lot No. 27, Township 11 and Range 7 of the Holland Land Company's Survey and according to map filed in the Erie County Clerk's Office under Cover No. 1776 is known as Subdivision Lot Number Forty-Three (43)

Said premises being known as 91 Loretto Drive, Cheektowaga, New York 14225

# Exhibit B

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Amherst, County of Erie and State of New York, being part of Lot No. 93, Township 12, Range 7 of the Holland Land Company's Survey, described as follows:

Beginning at the point of intersection of the north line of Klein Road and the west line of lands conveyed to Peter Oliver by Deed recorded in the Erie County Clerk's Office in Liber 163 of Deeds, thence northerly along the west line of lands so conveyed to Oliver by aforesaid Deed and parallel with the east line of said Lot No. 93, Township 12, Range 7 and 1156.98 feet westerly therefrom 250 feet to a point: thence easterly parallel with the north line of said Klein Road 130 feet to a point: thence southerly parallel with the east line of said Lot No. 93, Township 12, Range 7, 250 feet to the north line of Klein Road: thence westerly along the north line of Klein Road 130 feet to the point of beginning.

Said premises being known as 660 KLEIN ROAD, AMHERST, NY 14221